IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTINA KELLER,

    Plaintiff,

v.                                                                        Civil Action 2:18-cv-341
                                                                         Judge George C. Smith
                                                                         Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Christina Keller, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits (DIB). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff filed an application for Disability Insurance Benefits on December 11, 2014, alleging disability beginning on November 10, 2014. (Doc. 10, Tr. 178, PAGEID #: 224). Her application was denied initially (*Id.*, Tr. 114–17, PAGEID #: 160–63), and again on reconsideration (*Id.*, Tr. 122–28, PAGEID #: 168–74). After a hearing, Administrative Law Judge Jeffrey Hartranft (the "ALJ") issued an unfavorable decision. (*Id.*, Tr. 12–26, PAGEID #: 58–72). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (*Id.*, Tr. 1–3, PAGEID #: 47–49).

Plaintiff filed this action on April 16, 2018 (Doc. 1), and the Commissioner filed the administrative record on June 13, 2018 (Doc. 10). Plaintiff filed a Statement of Specific Errors (Doc. 13), the Commissioner responded (Doc. 15), and no reply was filed.

## B. Relevant Testimony at the Administrative Hearing

Plaintiff was 63 years old at the time of the administrative hearing. (Doc. 10, Tr. 51, PAGEID #: 97). At the time of the hearing, she was 5'2" and 125 pounds. (*Id.*). She testified that she is married and has two adult children. (*Id.*).

Plaintiff has a driver's license and is able to drive without any problems. (*Id.*, Tr. 52, PAGEID #: 98). She last worked as a sales representative for Express Employment in 2014. (*Id.*, Tr. 52–53, PAGEID #: 98–99). As a sale representative, she spent seven to eight hours on her feet per day. (*Id.*, Tr. 53, PAGEID #: 99). She stopped working at that job because she "got really sick" to the point "where [she] couldn't move, basically." (*Id.*, Tr. 54, PAGEID #: 100).

Plaintiff reported that she experiences "a lot" of anxiety, including panic attacks. (*Id.*, Tr. 65, PAGEID #: 111). She testified that she experienced panic attacks because of concerns about losing her job and stress. (*Id.*, Tr. 68, PAGEID #: 114). Plaintiff takes Lorazepam for her anxiety and an Ambien at night to help her sleep. (*Id.*, Tr. 68–69, PAGEID #: 114–15). She also suffers from depression for which she takes medication. (*Id.*, Tr. 65, PAGEID #: 113). Plaintiff testified that she had not received any mental health treatment since she had stopped working. (*Id.*, Tr. 69, PAGEID #: 115).

Physically, Plaintiff suffers from fibromyalgia. (*Id.*, Tr. 65, PAGEID #: 111). The pain from her fibromyalgia makes it difficult for Plaintiff to get out of bed some mornings. (*Id.*). Her pain is particularly acute at certain "trigger points," such as her back and hands. (*Id.*). She has

difficulty walking because of pain in her legs. (*Id.*). Among other things, her fibromyalgia prevents her from lifting. (*Id.*). To treat fibromyalgia, Plaintiff takes an anti-inflammatory. (*Id.*, Tr. 69, PAGEID #: 115). She does not take gabapentin or any nerve medicine. (*Id.*). Plaintiff testified that she previously received physical therapy and treatment from a chiropractor, but neither of those were effective. (*Id.*, Tr. 70, PAGEID #: 116). She testified that she had never used any narcotic medication. (*Id.*, Tr. 72–73, PAGEID #: 118–19). According to Plaintiff, she has tried every recommended course of treatment for her fibromyalgia, but none have been effective. (*Id.*, Tr. 75–76, PAGEID #: 121–22).

She estimates that on an average day, she can walk for 20 minutes before she would have to stop and rest for 15-20 minutes. (*Id.*, Tr. 70–71, PAGEID #: 116–17). Further, she testified that she could stand for 15 minutes and sit for approximately 20 minutes. (*Id.*, Tr. 71–72, PAGEID #: 117–18).

Plaintiff testified that she can make coffee and do laundry, but she cannot carry a heavy basket of laundry. (*Id.*, Tr. 65–66, PAGEID #: 111–12). She can also make dinner, but sometimes gets fatigued and has to sit down to take a break while cooking because she is unable to stand for very long. (*Id.*, Tr. 66, PAGEID #: 112). The ALJ questioned Plaintiff about her activities of daily living. (*Id.*, Tr. 73, PAGEID #: 119). On an average day, Plaintiff does "some things around the house," including cleaning, but she has to do that "very slowly." (*Id.*). She generally avoids "running around . . . for long periods of time," but she will go to the grocery store and do some light shopping on her own. (*Id.*). She occasionally attends events at her grandchildren's schools and also occasionally socializes with friends. (*Id.*, Tr. 74, PAGEID #: 120).

A vocational expert ("VE") opined that Plaintiff was capable of performing her past work

3

as an outside sales representative, sales clerk, or retail manager. (*Id.*, Tr. 83–84, PAGEID #: 129–30). After the ALJ limited Plaintiff to sedentary work with certain restrictions, the VE concluded that Plaintiff could not perform her past work. (*Id.*, Tr. 84–85, PAGEID #: 130–31). The VE further opined that "in all work, employers generally won't tolerate any more than about one day a month of unapproved or un-excused absenteeism." (*Id.*, Tr. 85–86, PAGEID #: 131–32).

### C. Relevant Medical Background

Plaintiff's argument concerns her physical impairments only, and consequently the Court examines the relevant medical evidence pertaining to the same.

From 2013 to 2016, Plaintiff received treatment for her fibromyalgia from her family physician, Dr. Joseph Carducci. (*See id.*, Tr. 261–290, PAGEID #: 307–336; Tr. 317–79, PAGEID #: 363–425; Tr. 395–403, PAGEID #: 443–49). Plaintiff treated her symptoms with an anti-inflammatory during that time period. (*See generally id.*). Consistent with her diagnosis of fibromyalgia, her symptoms waxed and waned over time. (*See generally id.*). On some occasions, Plaintiff complained of pain and fatigue. (*See, e.g.*, Doc. 10, Tr. 268, PAGEID #: 314 (noting chest pain and fatigue); *id.*, Tr. 273, PAGEID #: 319 (noting fatigue, headache, and neck pain); *id.*, Tr. 325–28, PAGEID #: 371–74 (noting increase in fibromyalgia, symptoms of fatigue and pain, and "generalized joint and muscle pain"); *id.*, Tr. 334, PAGEID #: 380 (noting gait disturbance, joint pain, and hip and knee pain)). But on some of those occasions, the results of Plaintiff's examination indicated no muscle or joint pain. (*See, e.g.*, *id.*, Tr. 268, PAGEID #: 314; *id.*, Tr. 273, PAGEID #: 319; *id.*, Tr. 278, PAGEID #: 324).

During the same time period, Plaintiff also received treatment for her fibromyalgia symptoms at Keystone Chiropractic Center ("Keystone"). (*Id.*, Tr. 306–316, PAGEID #: 352–62;

4

*id.*, Tr. 380–396, PAGEID #: 426–42). On March 17, 2015, Plaintiff reported "an acute dull and aching discomfort of insidious onset (non-radiating) located in the posterior cervical (neck), left posterior trapezius, right posterior trapezius and lumbar region(s) of unknown origin." (*Id.*, Tr. 307, PAGEID #: 353). Plaintiff described her level of pain as a seven out of ten. (*Id.*). Nathan Lorenz, DC, CCSP, observed that Plaintiff "is of good health and is expected to make good progress and recovery with few residuals." (*Id.*, Tr. 308, PAGEID #: 354). He diagnosed Plaintiff with nonallopathic lesions, cervical; cervical sprain/strain; and myalgia and myositis – unspecified. (*Id.*).

During the course of her chiropractic treatment, Plaintiff's pain level ranged from three to seven out of ten. (*Id.*, Tr. 306–316, PAGEID #: 352–62; *id.*, Tr. 380–396, PAGEID #: 426–42). At each of her appointments, the treating source opined that Plaintiff was "[i]mproving because she is reporting less discomfort and is showing improved function." (*See generally id.*, Tr. 306–316, PAGEID #: 352–62; *id.*, Tr. 380–396, PAGEID #: 426–42).

On January 22, 2015, Dr. Herbert Grodner completed a Social Security Disability physical examination of the Plaintiff. (Doc. 10, Tr. 291–298, PAGEID #: 337–344). Dr. Grodner noted that Plaintiff had been diagnosed with fibromyalgia that had gotten progressively worse over time. (*Id.*, Tr. 291, PAGEID #: 337). Plaintiff reported that her pain had increased as she had gotten older and that she felt increasingly lethargic and fatigued. (*Id.*). Based on his examination, Dr. Grodner found that the results of Plaintiff's manual muscle testing were normal. (*Id.*, Tr. 294–97, PAGEID #: 340–43). Dr. Grodner opined:

> Based on the objective findings at this time, it would be my opinion that this lady may have some difficulty with prolonged weight bearing activities such as standing, walking, repetitively bending and lifting, climbing repetitively stairs, scaffolding, or ladders. I do feel that she, from the physical perspective, could participate in

5

sedentary activity. A consultation with a pain specialist may be helpful.

(*Id.*, Tr. 293, PAGEID #: 339).

On February 17, 2017, Dr. Joseph Carducci completed a Fibromyalgia Residual Functional Capacity Questionnaire. (*Id.*, Tr. 404–06, PAGEID #: 450–52). He found that Plaintiff met the American Rheumatological criteria for fibromyalgia and that her prognosis was "poor." (*Id.*, Tr. 404, PAGEID #: 450). Dr. Carducci noted the following symptoms: multiple tender points, anxiety, numbness and tingling, chronic fatigue, breathlessness, subjective swelling, depression, non restorative sleep, muscle weakness, and panic attacks. (*Id.*). He opined that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. (*Id.*). Dr. Carducci indicated Plaintiff had pain in her shoulders, arms, hands, fingers, hips, legs, knees, ankles, feet, lumbosacral spine, cervical spine, thoracic spine, and chest. (*Id.*). He stated that changing weather, fatigue, cold, stress, hormonal changes, movement, and overuse could cause Plaintiff's pain. (*Id.*). He further found that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described. (*Id.*). With respect to Plaintiff's pain, he found that she experienced constant severe pain that interfered with her attention and concentration. (*Id.*). Further, Dr. Carducci opined that Plaintiff was severely limited in her ability to deal with work stress because of her fibromyalgia. (*Id.*). He found that Plaintiff was not a "malingerer." (*Id.*, Tr. 405, PAGEID #: 451).

Dr. Carducci then estimated Plaintiff's functional limitations in a work setting. (*Id.*). He opined that Plaintiff could sit for 30 minutes at a time and could stand for 15-20 minutes at a time. (*Id.*). He further estimated that Plaintiff could occasionally lift less than 10 pounds but that she could never lift anything heavier than 10 pounds. (*Id.*). Finally, he found that Plaintiff would have

6

significant limitations with tasks involving repetitive reaching, handling, or fingering. (*Id.*).

### D. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairment of fibromyalgia. (Doc. 10, Tr. 17, PAGEID #: 63). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id.*, Tr. 19, PAGEID #: 65).

As to Plaintiff's RFC, the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, or scaffolds; and needs to avoid workplace hazards, such as unprotected heights and machinery.

(*Id.*, Tr. 19, PAGEID #: 65).

To reach this conclusion, the ALJ first considered Plaintiff's own statements regarding her symptoms and their effect on her residual functional capacity. (*Id.*, Tr. 20, PAGEID #: 66). While Plaintiff reported experiencing significant pain and fatigue because of her fibromyalgia, the ALJ noted that:

> [S]he has not had problems with falling. In fact, she admitted that she tries to keep moving since she reports that this helps her. She also admits that, despite the pain and the limitations from the pain associated with her having fibromyalgia, she is able to take care of her home by performing most of the household chores. Furthermore, the results of a physical examination performed on March 17, 2015 revealed that she has normal 5/5 motor testing as well as normal range of motion for the cervical, thoracic, and lumbar spines. At many office visits throughout the relevant period, muscle and joint pain were negative upon examination.

(*Id.* (internal citations omitted)). As a result, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of . . . the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of

7

these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*).

The ALJ then turned to the opinion evidence. (*Id.*, Tr. 20–21, PAGEID #: 66–67). First, he considered the State Agency medical consultants' opinion and found that they were entitled to partial weight because they had "specialized knowledge in evaluating physical impairments and the listings under the SSA standards for disability" and their opinions were "mostly consistent with the record, such as physical examinations." (*Id.*, Tr. 20, PAGEID #: 66).

Next, the ALJ afforded the opinion of the medical consultant, Dr. Grodner, "other weight." (*Id.*). Dr. Grodner opined that Plaintiff could participate in sedentary activity, but that she would have some difficulty with certain prolonged weigh bearing activities. (*Id.*, Tr. 21, PAGEID #: 67). However, the ALJ found that the restriction to sedentary activity was inconsistent with the findings of Dr. Grodner's examination "as well as his statement that she may have some difficulties with activities." (*Id.*).

Finally, the ALJ assigned little weight to the opinion of Plaintiff's treating physician, Dr. Carducci. (*Id.*). The ALJ acknowledged that Dr. Carducci was a treating physician but emphasized that Dr. Carducci's opinion was inconsistent with his office notes, which primarily concerned Plaintiff's other health issues that were temporary in nature. (*Id.*).

Based on Plaintiff's RFC, the ALJ concluded that she was capable of performing past relevant work as an outside sales representative, sales clerk, and retail manager. (*Id.*, Tr. 21–22, PAGEID #: 67–68).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts three assignments of error: (1) that the ALJ's decision is not supported by substantial evidence when his pain analysis is flawed, (2) when he improperly rejects the opinion of the treating physician, and (3) when he adopts a hypothetical question that does not reflect Plaintiff's RFC. (*See generally* Doc. 13). Because the first assignment of error has merit, the Undersigned does not reach the second and third assignments of error.

Fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Sec'y of HHS*, 854 F.2d 815, 817 (6th Cir. 1988). "In stark contrast to the unremitting pain of which [fibromyalgia] patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Id.* at 817–18. "There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients." *Id.* at 818.

Because fibromyalgia is an "elusive" and "mysterious" disease, *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996), the Social Security Administration has provided additional guidance on how it develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how it evaluates fibromyalgia in disability claims, SSR 12–2p, 2012 WL 3104869, at *1 (July 25, 2012). "SSR 12–2p describes criteria for establishing that a person has a medically determinable impairment . . . of fibromyalgia, the sources of evidence the ALJ may look to, and how a claimant's subjective assertions of pain and functional limitations are evaluated." *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016) (internal citations omitted). "The Ruling also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI." *Id.* at 399 (citation omitted).

Relevant here, SSR 12–2p addresses how the SSA evaluates a claimant's statements about his or her symptoms and functional limitation resulting from fibromyalgia:

We follow the two-step process set forth in our regulations and in SSR 96-7p.

   A. First step of the symptom evaluation process. There must be medical signs and findings that show the person has an MDI(s) which could reasonably be

expected to produce the pain or other symptoms alleged. FM which we determined to be an MDI satisfies the first step of our two-step process for evaluating symptoms.

B. Second step of the symptom evaluation process. Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. We will make every reasonable effort to obtain available information that could help us assess the credibility of the person's statements.

SSR 12–2p, 2012 WL 3104869, at *5.

While SSR 12-2p refers to SSR 96-7p, the SSA has subsequently issued SSR 16-3p, "which supersedes SSR 96-7p." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (citing SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016)). SSR 16-3p is substantively similar to SSR 96-7p, but eliminates the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16–3p, 2016 WL 1119029, at *1. When considering a claimant's own statements about the intensity, persistence, and limiting effects of her symptoms, an ALJ should evaluate "whether the statements are consistent with objective medical evidence and the other evidence." *Id.* at *4. As part of this evaluation, an ALJ should consider a number of factors, including:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

11

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at \*7. "Although a discussion of all the factors is not required in the ALJ's decision," an ALJ must explain evaluation of the claimant's statements "with sufficient specificity to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Pariscoff v. Comm'r of Soc. Sec.*, No. 2:17-CV-798, 2018 WL 1224515, at \*5 (S.D. Ohio Mar. 9, 2018), *report and recommendation adopted sub nom. Pariscoff v. Comm'r of Soc. Sec.*, No. 2:17-CV-798, 2018 WL 1935512 (S.D. Ohio Apr. 24, 2018) (citation and internal quotation marks omitted).

The Sixth Circuit's decision in *Rogers v. Commissioner of Social Security* illustrates the importance of this requirement in fibromyalgia cases. 486 F.3d 234 (6th Cir. 2007). The claimant there asserted that the pain associated with her fibromyalgia and rheumatoid arthritis prevented her from engaging in substantial gainful employment. *Id.* at 237. At the second hearing before an ALJ, the claimant testified regarding her symptoms:

> She described experiencing severe pain in her head, shoulders, elbows, wrists, fingers, hips, knees, ankles, and feet, and of having significant stiffness and swelling. She further testified that she could lift only two or three pounds, with difficulty. Also, standing longer than thirty minutes was painful, as was walking. She testified she is limited in her ability to manipulate objects with her hands. As for daily routine, she said she showers, dries her hair, tends to her dog, prepares

light meals, performs light dusting, arranges her bed, and shops for groceries and clothing. On pleasant days, she walks for at least a mile.

*Id.* at 240.

In his written decision concluding that the claimant was not disabled, the ALJ in *Rogers* found that the claimant's subjective complaints of pain were "not fully credible." *Id.* at 246. "Specifically, the ALJ was persuaded by the absence of objective medical evidence supporting her symptoms, Rogers' own testimony regarding her daily activities, and testimony by Dr. Leeb that the best treatment for fibromyalgia patients is to exercise regularly." *Id.* at 246–47.

On appeal, the Sixth Circuit found this analysis wanting. As the Court explained at the outset of its analysis, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.* at 248. "And given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Id.*

The Court then turned to the three specific grounds the ALJ cited in discounting the claimant's subjective complaints of pain. *Id.* at 248–49. First, the Court criticized the ALJ's emphasis on the lack of objective medical evidence supporting the claimant's subjective complaints of pain, explaining that "the nature of fibromyalgia itself renders such a brief analysis and over-emphasis upon objective findings inappropriate." *Id.* at 248. Particularly concerning, in the Court's view, was the ALJ's failure "to discuss or consider the lengthy and frequent course of medical treatment or the nature and extent of that treatment, the numerous medications Rogers ha[d] been prescribed, the reasons for which they were prescribed, or the side effects Rogers testified she experiences from those medications." *Id.*

13

Second, the Court addressed the ALJ's analysis of the claimant's activities of daily living. *Id.* at 248–49. While the ALJ concluded that the claimant was "fairly active" and capable of driving, cleaning, and personal care, the Court found he ignored or minimized the physical effects of those activities and the fact that the claimant received assistance with many of her activities of daily living. *Id.* at 248–49.

Finally, the Court critiqued the ALJ's reliance on Dr. Leeb's testimony at the second hearing that "the best treatment for fibromyalgia is regular exercise, including walking and stretching." *Id.* at 249. The Court reasoned "the fact that a patient is encouraged to remain active does not reflect the manner in which such activities may aggravate the patient's symptoms," emphasizing that the claimant's treating physicians recommended that she exercise as much as possible, but still concluded that she was disabled. *Id.*

Because of these flaws in the ALJ's credibility analysis, the Court concluded that the ALJ's decision did not "contain specific reasons for the finding on credibility, supported by the evidence in the case record," and was not "sufficiently specific to make clear to the individual and to any subsequent reviews the weight the adjudicator gave to [Rogers'] statements and the reasons for that weight." *Id.*

The ALJ's decision in this case suffers from similar deficiencies. In reviewing Plaintiff's subjective complaints of pain related to fibromyalgia, the ALJ appropriately considered many of the factors identified in SSR 16-3p:

> She reports that "everything aches," that she has fatigue, and that "I forget things now. Stress makes things worse." She says that the pain has gotten worse as she has gotten older and it has progressed. She also feels very lethargic and has fatigue and has difficulty with stress. She also feels that the concentration and memory are not as good as they used to be. The record shows that she has taken medication,

14

such as Etodolac, for the pain. She also participated in chiropractic care for several
months in 2015, which included treatments such as myofascial release and manual.

(Doc. 10, Tr. 20, PAGEID #: 66 (internal citations omitted)). To varying degrees, this account addresses: (1) the location, duration, frequency, and intensity of pain or other symptoms; (2) factors that precipitate and aggravate the symptoms; (3) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and (4) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *See* SSR 16–3p, 2016 WL 1119029, at *7 (identifying factors to be considered when evaluating a claimant's own statements about the intensity, persistence, and limiting effects of his or her symptoms). So far, so good.

More problematic is the ALJ's analysis of the remaining factors that he relied on to discount Plaintiff's statements regarding her subjective complaints of pain:

> [S]he has not had problems with falling. In fact, she admitted that she tries to keep moving since she reports that this helps her. She also admits that, despite the pain and the limitations from the pain associated with her having fibromyalgia, she is able to take care of her home by performing most of the household chores. Furthermore, the results of a physical examination performed on March 17, 2015 revealed that she has normal 5/5 motor testing as well as normal range of motion for the cervical, thoracic, and lumbar spines. At many office visits throughout the relevant period, muscle and joint pain were negative upon examination.

(Doc. 10, Tr. 20, PAGEID #: 66 (internal citations omitted)). Because of Plaintiff's attempts to remain active, her ability to perform most household chores, and the results of her physical examinations, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record" and discounted her subjective complaints of pain accordingly. (*Id.*).

This analysis of Plaintiff's subjective complaints of pain caused by fibromyalgia is

substantively similar to those the Sixth Circuit has rejected. *See, e.g.*, *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862–65 (6th Cir. 2011); *Rogers*, 486 F.3d at 246–49. First, the ALJ noted that Plaintiff "tries to keep moving" because that helps her pain. (Doc. 10, Tr. 20, PAGEID #: 66). Exercise and physical activity are common treatments for fibromyalgia. *See* Mayo Clinic, *Fibromyalgia: Does exercise help or hurt?*, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/in-depth/fibromyalgia-and-exercise/art-20093376 (last visited Jan. 4, 2019) ("While the pain and fatigue associated with fibromyalgia may make exercise and daily activities difficult, it is crucial to be physically active. Research has repeatedly shown that regular aerobic exercise improves pain, function and overall quality of life."). That Plaintiff tried to keep active is not a basis to discount her statements regarding her subject complaints of pain. *See Kalmbach*, 409 F. App'x at 865 ("Nor can the fact that Dr. Kalmbach recommended weight loss and exercise be deemed to detract from Kalmbach's credibility." (citing *Rogers*, 486 F.3d at 249)); *Rogers*, 409 F. App'x at 248–49 (holding that ALJ improperly discredited claimant's subjective complaints of pain based on her doctors' recommendation to exercise regularly as treatment for fibromyalgia). This is particularly true given her testimony regarding the difficulties she experienced with trying to remain active. (*See, e.g.*, Doc. 10, Tr. 70–72, PAGEID #: 116–17 (testifying that she can walk for 20 minutes before she would have to stop and rest for 15-20 minutes)).

Second, the ALJ noted that Plaintiff could take care of her house and perform most household chores. (Doc. 10, Tr. 20, PAGEID #: 66). The Sixth Circuit has expressed skepticism that a plaintiff's limited ability to perform basic activities of daily living is a basis for discounting his or her subjective complaints of pain related to fibromyalgia. *See Kalmbach*, 409 F. App'x at

864 ("Kalmbach indeed testified that she went to the grocery store, the pharmacy, and church, and that she was able to prepare her own meals most of the time, and usually able to dress herself without assistance. She was able to drive, but had to limit it to less than thirty minutes per day. These minimal activities are hardly consistent with eight hours' worth of typical work activities." (citing *Rogers*, 486 F.3d at 248–49)); *Rogers*, 486 F.3d at 248–49 (finding that the plaintiff's daily functions, including her ability to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news, were "somewhat minimal daily functions" not "comparable to typical work activities" and did not justify the ALJ's discrediting her testimony). Here, Plaintiff testified that she can make coffee and do laundry, but she cannot carry a heavy basket of laundry. (*Id.*, Tr. 65–66, PAGEID #: 111–12). She can also make dinner, but sometimes gets fatigued and has to sit down to take a break while cooking because she is unable to stand for very long. (*Id.*, Tr. 66, PAGEID #: 112). Plaintiff testified that, on an average day, she does "some things around the house," including cleaning, but she has to do that "very slowly." (*Id.*, Tr. 73, PAGEID #: 119). Consistent with *Rogers* and *Kalmbach*, and absent further analysis by the ALJ, Plaintiff's limited activities of daily living do not support discrediting Plaintiff's subjective complaints of pain related to fibromyalgia.

Third, the ALJ emphasized that Plaintiff's subjective complaints of pain were not supported by objective medical evidence. (Doc. 10, Tr. 20, PAGEID #: 66 ("Furthermore, the results of a physical examination performed on March 17, 2015 revealed that she has normal 5/5 motor testing as well as normal range of motion for the cervical, thoracic, and lumbar spines. At many office visits throughout the relevant period, muscle and joint pain were negative upon examination.")). True enough. The record contains little, if any, objective medical evidence

17

corroborating Plaintiff's fibromyalgia symptoms. But that is consistent with, rather than contrary to, a diagnosis of fibromyalgia. "Fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Rogers*, 486 F.3d at 243 (quoting *Preston*, 854 F.2d at 820). As the Sixth Circuit has made clear, "the absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant." *Kalmbach*, 409 F. App'x at 864; s*ee also Rogers*, 486 F.3d at 243 ("[U]nlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs."); *Preston*, 854 F.2d at 820 (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia). Therefore, the lack of objective medical evidence supporting Plaintiff's subjective complaints of pain was not an appropriate basis for discounting Plaintiff's testimony.

Finally, the ALJ observed that Plaintiff had not reported problems with falling. (Doc. 10, Tr. 20, PAGEID #: 66). That may well be. But the ALJ's decision is silent as to why this is a basis for discounting Plaintiff's subjective complaints of pain. Absent further explanation, this fact does not support justify discounting Plaintiff's subjective complaints of pain.

Social Security regulations provide that a "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2016 WL 1119029, at *9. Based on the foregoing, the decision below does not satisfy this standard, and is therefore not supported by substantial evidence.

In such a situation, "the Court must determine whether to remand the matter for rehearing

18

or to award benefits." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 923 (S.D. Ohio 2016). "Generally, benefits may be awarded immediately 'if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.'" *Id*. at 924 (quoting *Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994)). A court should only award benefits in a case "where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming." *Id*. The Undersigned finds that proof of disability is not overwhelming here. *See id.* Therefore, the Undersigned recommends that the case be remanded for further consideration.

Upon remand, the ALJ should properly consider and discuss Plaintiff's subjective complaints of pain consistent with the appropriate regulatory guidance and Sixth Circuit precedent. Plaintiff also raised two additional assignments of error. Having concluded that Plaintiff's first assignment of error warrants reversal, the Undersigned declines to address the remaining assignments of error. If the recommendation is adopted, the ALJ may consider Plaintiff's remaining assignment of error on remand if appropriate.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge under Sentence Four of § 405(g).

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.


Date:   January 28, 2019                                 /s/ Kimberly A. Jolson
                                                                           KIMBERLY A. JOLSON
                                                                           UNITED STATES MAGISTRATE JUDGE